UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

RICHARD R.,[1]

                Plaintiff,

      v.

COMMISSIONER, Social Security
Administration,

                Defendant.

Case No. 3:19-cv-00918-MK

**OPINION
AND ORDER**

_____

**Kasubhai,** United States Magistrate Judge:

Plaintiff Richard R. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for disability

insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction

to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have

consented to allow a Magistrate Judge to enter final orders and judgment in this case in

accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 6. For

the reasons that follow, the Commissioner's final decision is REVERSED and this case is

REMANDED for an immediate calculation and payment of benefits.

_____

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-
government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in February 2016 with an alleged onset date of August 18, 2014.[2] Tr. 15. His claims were denied initially and upon reconsideration. *Id.* Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in April 2018. Tr. 35–59; 160–61. On June 19, 2018, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 15–29. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 47 years old on his alleged onset date. Tr. 28. He served in the United States Navy from 1988 through 1992. Tr. 702. Plaintiff alleges disability based on: bilateral tinnitus, hearing loss, dumping syndrome, hemorrhoids, irritable bowel syndrome, sleep apnea, panic and anxiety disorder, major depressive disorders, and post-traumatic stress disorder ("PTSD"). Tr. 210. His PTSD stems from being detained by police abroad where he was "terrorize[d] for several hours" at one point during which he believed he "would be executed." Tr. 702. Due to his impairments, Plaintiff left his job as a Veteran Service Officer for Clackamas County in October 2014. Tr. 42.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] "Tr." citations are to the Administrative Record. ECF No. 12.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court

must weigh "both the evidence that supports and detracts from the [Commissioner's]

conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a

whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also*

*Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold

the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First,

the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if

so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe

impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§

404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If

not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner

determines whether the impairments meet or equal "one of a number of listed impairments that

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to

determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related

activities that the claimant may still perform on a regular and continuing basis, despite any

limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e),

416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can

perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If

the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden

shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must

establish that the claimant can perform other work that exists in significant numbers in the

national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner

meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had

not engaged in substantial gainful activity since his alleged onset date. Tr. 17. At step two, the

ALJ found that Plaintiff had the following severe impairments: PTSD and major depressive

disorder. Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or

combination thereof that met or medically equaled the severity of a listed impairment. Tr. 18.

The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels,

with the following non-exertional limitations: "he can do simple, routine tasks with no public

contact and occasional, superficial contact with coworkers." Tr. 20.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

Tr. 28. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and

RFC, a significant number of jobs existed in the national economy such that Plaintiff could

sustain employment despite his impairments. Tr. 28. The ALJ thus found Plaintiff was not

disabled within the meaning of the Act. Tr. 29.

## DISCUSSION

Plaintiff assigns error to five portions of the ALJ's decision. First, he argues that the ALJ

erroneously rejected his subjective symptom testimony. Second, Plaintiff contends that the ALJ

improperly weighed the medical opinion evidence. Third, he asserts that the ALJ erroneously

found his impairments did not satisfy a Listing at step three. Fourth, he argues that the ALJ failed

to supply legally sufficient reasons for rejecting Plaintiff's Veterans Affairs ("VA") disability

rating. Fifth, and finally, he challenges the ALJ's step five finding. The Court addresses each

argument in turn.

## I.    Subjective Symptom Testimony

As noted, Plaintiff argues that the ALJ improperly rejected his subjective symptom

testimony. Pl. Opening. Br. 16–19, ECF No. 13 ("Pl.'s Br."). When a claimant has medically

documented impairments that could reasonably be expected to produce some degree of the

symptoms complained of, and the record contains no affirmative evidence of malingering, "the

ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering

specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th

Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is

insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence

suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude

that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d

748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's

subjective symptom testimony is "supported by substantial evidence in the record, [the court]

may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)

(internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is

not an examination of an individual's character," and requires that the ALJ consider all the

evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3]

SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case

record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4.

The Commissioner asserts that the ALJ supplied four permissible rationales for rejecting

Plaintiff's subjective complaints: (A) the objective evidence was inconsistent with Plaintiff's

allegations; (B) Plaintiff's symptoms improved with treatment; (C) Plaintiff's PTSD was

longstanding and did not prevent him from working in the past; and (D) Plaintiff's daily

activities were inconsistent with his allegations.

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

A.       **Objective Evidence**

The Commissioner asserts that the ALJ properly discounted Plaintiff's allegations because they were inconsistent with the objective medical evidence. Def.'s Br. 4–5, ECF No. 14. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at [their] hearing do not comport with objective medical evidence in [their] medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, especially in the mental health context, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects longstanding psychological disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Commissioner directs the Court to a number of "unremarkable" treatment notes in which "Plaintiff displayed cooperative behavior, organized and goal directed thought process and intact memory." Def.'s Br. 4–5. However, the Ninth Circuit has rejected reliance upon substantially similar observations in the context of mental health impairments. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety").

Moreover, an independent review of the record reflects that Plaintiff's subjective complaints find sound support in the record. For example, a May 2015 treatment note reflects that Plaintiff had difficulty trusting people and difficulty trusting himself to control his anger. Tr.

419. In November 2015, Plaintiff presented with continued ruminations, distrustful thoughts, a "down" mood, insomnia, inattentiveness and low self-esteem. Tr. 519. In February 2016, Plaintiff's mood remained chronically down and he presented with an anxious affect, difficulty maintaining present focus, and racing thoughts. Tr. 503. Later that month, another provider observed that he was somewhat more tearful than in previous sessions. Tr. 499. In March 2016, he presented as depressed and irritable, with suicidal ideations and he described symptoms of isolating, negative thoughts about himself and the world, distrust, and paranoia. Tr. 484–85. In March 2017, a provider observed that his mood remained down, with chronic feelings of worthlessness, low energy, isolating behaviors, and thoughts about death as well as suicidal ideations. Tr. 895–96. In May 2017, Plaintiff presented as depressed and reported that he becomes overwhelmed with anxiety and negative thoughts about himself when he considers reconnecting with others. Tr. 887.

The ALJ here failed to account for the inherently cyclical nature of bipolar disorder, *see Garrison v. Colvin*, 759 F.3d 995, 1017, and improperly relied on cherry-picked instances of favorable psychological symptoms, *see Ghanim*, 763 F.3d at 1164. *See also Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnosis will always depend in part on the patient's self-report, as well as the clinician's observations of the patient. But such is the nature of psychiatry . . . ."). As such, the objective evidence was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### B.    Symptom Improvement

The Commissioner next asserts that Plaintiff's course of treatment provided a clear and convincing reason to reject Plaintiff's testimony. Tr. 21–22. The effectiveness of treatment is a

relevant factor ALJs may consider when evaluating subjective symptom testimony. *See* 20

C.F.R. §§ 404.1529(c)(iv–v), 416.929(c)(iv–v). However, "it is error to reject a claimant's

testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759

F.3d at 1017. Rather, reports of improvement in the mental health context "must be interpreted

with an understanding of the patient's overall well-being and the nature of her symptoms." *Id*.

Moreover, the Ninth Circuit has cautioned against drawing inferences based upon reports of

improvements during mental health treatment. *See id*. at 1017–18; *see also Holohan v.*

*Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) ("[S]tatements must be read in context of the

overall diagnostic picture he draws. That a person who suffers from severe panic attacks,

anxiety, and depression makes some improvement does not mean that the person's impairments

no longer seriously affect her ability to function in a workplace.").

      For his part, the Commissioner acknowledges Plaintiff's seven-week inpatient treatment

for PTSD, but nevertheless asserts that the ALJ properly rejected his testimony because upon

discharge Plaintiff "reported mild improvement in mood and thinking." Def.'s Br. 5 (citing Tr.

393); *see also* Tr. 40. The Commissioner then directs the Court to treatment notes from

November 2016 through February 2018 where Plaintiff purportedly reported improvement with

his nightmares, insomnia, paranoia and that, at times, "his medications were helping

somewhat[.]" *Id*.

      An independent review of those treatment notes, however, fails to support the

Commissioner's contention that Plaintiff's symptoms improved. When viewed in context, those

records reveal that while Plaintiff made limited improvement at times, his mental health

impairments consistently affected his ability to function. For example, in the same inpatient

discharge treatment note cited by the Commissioner, the provider observed that Plaintiff

"experienced little reduction in emotional distress." Tr. 392. Plaintiff's June 2017 report that his medication was "helping somewhat," ignores the remainder of the sentence: "but he continues to have active PTSD [symptoms] including nightmares, and depressed mood [symptoms]." Tr. 883. The Commissioner's reliance on an August 2017 treatment note, in which Plaintiff reported that he was "[s]leeping fairly consistently," ignores the provider's assessment of his "chronically down" mood and reports of "distressing interpersonal interactions." Tr. 878.

As such, the ALJ failed to view Plaintiff's limited reports of improvement "with an understanding of [his] overall well-being and the nature of [his] symptoms." *Garrison*, 759 F.3d at 1017. Accordingly, Plaintiff's response to treatment was not a clear and convincing reason to reject his subjective symptom testimony. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Ghanim*, 763 F.3d at 1162 (the "fact that a person suffering from depression makes some improvement does not mean that person's impairment no longer seriously affects his ability to function in the workplace") (quotation marks and bracketing omitted).

C.    **Past Work**

The Commissioner asserts that the ALJ properly rejected Plaintiff's testimony because he was able to work for a number of years despite his PTSD. Def.'s Br. 8 (citing *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988)). *Gregory* held that "[a]n ALJ may reject allegations of disabling limitations when a claimant's impairment is of longstanding duration and did not prevent him from working in the past, and there is no evidence of significant worsening of symptoms during the relevant period." 844 F.2d at 667.

This case is distinguishable from *Gregory*. Plaintiff's impairments primarily stem from his mental health disorders, not physical ailments as in *Gregory*, and Plaintiff testified that his impairments worsened over time:

> "I stopped working because I was increasingly dealing with anger and irritability, which after seeing—starting to see the VA in 2010 was later determined to be PTSD. And the job and other events in life were exacerbating that condition. I was unable to sleep, still am unable to sleep. I was having to leave work often due to either not sleeping or irritability or just work issues with coworkers or with persons of authority."

Tr. 42. The fact that Plaintiff was able to work for a time despite his mental health impairments fails to account for this testimony, which is evidence the ALJ was required to consider, that his symptoms worsened over time, ultimately becoming debilitating. As such, Plaintiff's past work history was not a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

### D.    Daily Activities

The Commissioner contends that the ALJ properly rejected Plaintiff's testimony based upon his activities of daily living. Def.'s Br. 6–8. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

The ALJ cited Plaintiff's ability to perform adequate self-care, prepare meals, manage his own medications, watch movies and television, read, complete household chores, drive, as well as go to the store and concluded that Plaintiff was "independent in his activities of daily living, he [was] able to do the things he wants to do, and his concentration and focus [were] not as limiting as he has alleged." Plaintiff. Tr. 22. The Ninth Circuit, however, has consistently held that such a modest level of activity is not sufficient to reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Commissioner also asserts that the ALJ properly rejected Plaintiff's testimony based on his ability to care for his 26-year-old son, who has a mild intellectual disability. Def.'s Br. 7. Although not cited by the Commissioner, the Ninth Circuit has implied that with an adequately developed record, childcare responsibilities "that are incompatible with the severity of symptoms alleged" could support an adverse credibility determination. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Ghanim*, 763 F.3d at 1165). However, because "there [was] almost no information in the record about [the claimant's] childcare activities," *Trevizo* held that "the mere fact that [the claimant cared] for small children [did] not constitute an adequately specific conflict with her reported limitations." *Id.*

On this record, Plaintiff's care for his adult son did not justify rejecting Plaintiff's testimony for at least two reasons. First, the ALJ's decision expressly acknowledged that Plaintiff's son was "largely self-sufficient" and that he receives assistance from family. Tr. 22–

23. Second, the ALJ's decision failed to explain how Plaintiff's care for his son in any way

undermined his subjective complaints. To properly discredit a claimant on the basis that his

activities contradict his testimony, the "ALJ must state specifically which symptom testimony is

not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see*

*also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (reversing credibility determination

where "the ALJ did not elaborate on which daily activities conflicted with which part of

[the c]laimant's testimony") (emphasis in original).[4]

  In sum, the ALJ failed to supply clear and convincing reasons for rejecting Plaintiff's

subjective symptom testimony. The ALJ is reversed as to this issue.

## II. Medical Evidence

  Plaintiff asserts that the ALJ improperly weighed the medical opinion evidence. Pl. Br.

11–14. The ALJ is responsible for resolving conflicts in the medical record, including conflicting

doctors' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

The law distinguishes between the opinions of three types of physicians: treating physicians,

examining physicians, and non-examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927.[5] The

opinions of treating physicians are generally accorded greater weight than the opinions of non-

---

[4] For this same reason, the ALJ's reliance on Plaintiff's ability to attend group therapy sessions, attend movies, exercise at a gym, travel, and ride a motorcycle fails. *See Smolen*, 80 F.3d at 1284. As this Court has recently observed an "ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Jessica E. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00224-MK, 2020 WL 2083963, at *6 (D. Or. Apr. 30, 2020) (citation omitted). In other words, other than generally summarizing these activities, the ALJ failed to explain how any of the listed activities undermined his subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject Plaintiff's testimony. *See Smolen*, 80 F.3d at 1284; *see also Burrell*, 775 F.3d at 1138.

[5] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. §§ 404.1527, 416.927.

treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a doctor's opinion is contradicted, however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quotation omitted).

### A.    Clifford D. Lynam, Psy.D.

Dr. Lynam completed several medical opinion statements regarding Plaintiff for insurance purposes. Tr. 26; Tr. 734–42; Tr. 927. On June 1, 2015, Dr. Lynam determined that Plaintiff had been disabled and unable to work beginning in August 2014 due to PTSD symptoms, chronic anxiety, intrusive recollections of trauma throughout the day, ruminative distress, exaggerated startle, and poorly controlled anger. Tr. 734. On October 16, 2015, Dr. Lynam again found Plaintiff was disabled and assessed marked level limitations in social functioning and adaptation. Tr. 737. The doctor opined that Plaintiff was precluded from working due to irritability, limited tolerance for interpersonal conflict, and reduced attention/focus related to ruminative thoughts. *Id*. On March 25, 2016, Dr. Lynam reaffirmed his October 16, 2015 findings. Tr. 740. Dr. Lynam examined Plaintiff again on August 22, 2016, and determined that his mental illnesses caused incapacitation due to insomnia, interpersonal irritability, avoidant behavior, social isolation, and anxiety when away from home. Tr. 735.

The ALJ assigned Dr. Lynam's opinions little weight. The Commissioner relies on two of the ALJ's stated rationales. First, he asserts that "most of [Dr. Lynam's] statements were mere

checked box answers, which [were] conclusory." Tr. 27. Second, the ALJ found that "it [was]

not clear whether Dr. Lynam was referring to all work, or if he was referring [to Plaintiff's]

current work because the forms for [Plaintiff's] insurer asked questions regarding [Plaintiff's]

ability to return to work for his current employer or for a different employer doing similar work."

*Id.*

An ALJ may "permissibly reject[] . . . check-off reports that [do] not contain any

explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.

2012) (citation omitted). Here, however, at least two of Dr. Lynam's opinions contain

contemporaneous clinical findings that support the doctor's conclusions. *See* Tr. 736 (mental

status examination finding "mood is anxious, depressed intermittent [suicidal ideation]. Affect

angry, anxious. Thoughts perceived as rapid, racing at times"); Tr. 739 (same). Moreover, Dr.

Lynam's opinions contain detailed explanations in support of the doctor's findings and are

consistent with the longitudinal record, spanning from 2014 to 2018. *See* Tr. 734–42. Further, on

multiple occasions under the doctor's care, he noted that medication management and

psychotherapy had not produced significant improvement in Plaintiff's symptoms, and that the

doctor did not expect them to improve. Tr. 738, 741.

As such, the Commissioner's reliance on *Molina*, which approved of the rejection of a

"check-the-box form in which [the doctor] failed to provide supporting reasoning or clinical

findings," is misplaced. Accordingly, the form of Dr. Lynam's opinions was not a specific and

legitimate reason to reject the doctor's opinion. *See Garrison*, 759 F.3d at 1013 (holding where

an opinion is "based on significant experience . . . and supported by numerous records . . . [it is]

entitled to weight that an otherwise unsupported and unexplained check-box form would not

merit").

Next, the Commissioner asserts that Dr. Lynam's opinion was vague "regarding Plaintiff's ability to work [and was] not useful in a disability determination, particularly when the ALJ similarly concluded that Plaintiff could not return to his past work." Def.'s Br. 12. The ALJ's conclusory assertion, however, falls short of the specific and legitimate standard. An "ALJ must do more than state conclusions. He must set forth his own interpretations and why they, rather than the doctors' are correct." *Garrison*, 759 F.3d at 1012. Moreover, assuming *arguendo* that the doctor's ultimate prognosis regarding Plaintiff's ability to return to work was ambiguous, the ALJ's conclusory reasoning fails to account for the specific functional limitations to which the doctor opined. *See, e.g.*, Tr. 737 (assessing functional limitations in activities of daily living, social functioning, concentration, adaptation to stress, and motivation); Tr. 740 (same). As such, this was not a specific and legitimate rationale to justify rejecting Dr. Lynam's opinions.

In sum, the ALJ failed to supply legally sufficient reasons for rejecting the medical opinions of Dr. Lynam. The ALJ's evaluation of the medical evidence is reversed.

### III.    Listings 12.04, 12.06, 12.15

Plaintiff asserts the ALJ's step three finding was erroneous. Pl.'s Br. 14–15. Specifically, he asserts, the ALJ failed to conduct an adequate evaluation of the record at step three and failed to find Plaintiff disabled under Listings 12.04, 12.06, and 12.15. At step three, an ALJ must evaluate the relevant evidence before reaching a conclusion as to whether a claimant's impairments meet or equal a listed impairment. *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001). A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet a listing. *See Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred by failing to consider evidence of equivalence). An ALJ, however, is only required to discuss and evaluate the evidence that supports his or her conclusion. *Lewis,* 236 F.3d 503 at 513.

Furthermore, the burden of proving that her impairments meet or equal a listing rests with the claimant. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment[.]"). Finally, "[l]isted impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citation and quotation omitted).

Plaintiff has failed to carry his burden to establish he meets or equals the Listings he references. For example, Plaintiff does not explicitly argue which of the three Listings he asserts he meets. Nor does he direct the Court to relevant language from any of the three Listings, identify medical evidence and explain how that evidence demonstrates that he meets a Listing, or identify controlling Ninth Circuit precedent for evaluating an ALJ's step three analysis. *See Lewis,* 236 F.3d at 514 (a claimant fails to meet her "burden when she offers no theory, plausible or otherwise, as to how her impairments combine to equal a listed impairment.").

As such, the Court finds that the ALJ appropriately discussed and evaluated the relevant evidence supporting his conclusions. *See Lewis*, 236 F.3d at 13 (affirming ALJ step three finding where ALJ "discussed and evaluated evidence supporting his conclusion"). The ALJ's step three finding is affirmed.

## IV.    Veteran Affairs Disability Rating

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting his VA disability rating. Pl.'s Br 9–11. The Ninth Circuit has instructed that "an ALJ must ordinarily

give great weight to a VA determination of disability." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694–95 (9th Cir. 2009) (citing *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002)). However, because the of the differences between the two programs, an ALJ may "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (quoting *McCartey*, 298 F.3d at 1076).[6]

The ALJ wrote as follows in rejecting the VA disability rating:

> Although [the VA disability rating] has been considered, a decision by any governmental or non-governmental agency about a claimant's disability status is based upon its own rules and may be different from disability decisions made on applications for benefits filed under Titles II and XVI of the Social Security Act. Evidence used in connection with other programs may become part of the Social Security record, but a decision made, for example, by the Department of Veterans Affairs about whether a claimant is disabled or unable to work is not binding on a Social Security disability decision.

Tr. 24.

The ALJ's rationale for rejecting the VA rating was legally insufficient. An ALJ cannot reject a VA rating solely because the SSA and VA's methodologies for determining disability differ. *Berry v. Astrue* 622 F.3d 1228, 1236 (9th Cir. 2010) ("Insofar as the ALJ distinguished

---

[6] Recently, the applicable regulations were amended such that adjudicators are no longer required to provide any written analysis of disability decisions by other agencies for Social Security disability claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1504 (explaining that for Social Security disability claims filed "on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by another governmental agency or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits"). This amendment does not apply here, however, because Plaintiff filed his disability claim before March 27, 2017. Thus, the ALJ was required to consider the VA rating and explain the weight, if any, to assign it under relevant Ninth Circuit precedent.

the VA's disability rating on the general ground that VA and SSA disability inquiries are

different, her analysis fell afoul of *McCartey.*") (quoting *Valentine,* 574 F.3d at 695).[7]

　　　　The ALJ is reversed as to this issue.

## V.　　Step Five

　　　　Plaintiff asserts that the ALJ's step five finding is not supported by substantial evidence.

Pl.'s Br. 19–20. The RFC reflects the most an individual can do. 20 C.F.R. §§ 404.1545,

416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments,

including those that are not "severe," and evaluate "all of the relevant medical and other

evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184.

An ALJ may rely on the testimony of a vocational expert ("VE") to determine whether a

claimant retains the ability to perform past relevant work at step four, or other work in the

national or regional economy at step five. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir.

2001). The ALJ is required to include only those limitations that are supported by substantial

evidence in the hypothetical posed to a VE. *See id.* at 1163-65. "Conversely, an ALJ is not free

to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th

Cir. 2006). In other words, limitations supported by substantial evidence must be incorporated

---

[7] The Commissioner concedes the ALJ erred but argues instead that the error was harmless because the ALJ "clearly linked his analysis of Dr. Sparr's opinion to the VA rating decision." Def.'s Br. 9–10. The Court is unpersuaded by the Commissioner's harmless error argument, which would effectively ignore the binding caselaw in this Circuit that require ALJs to "ordinarily give great weight to a VA determination of disability." *Valentine*, 574 F.3d at 694–95; *see also McCartey*, 298 F.3d at 1076 ("We agree with the approach of the Fourth, Fifth, and Eleventh Circuits and hold that in an SSD case an ALJ must ordinarily give great weight to a VA determination of disability."). Unless and until the Ninth Circuit overrules those decisions, they are binding on district courts.

into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163–65.

Here, the ALJ improperly discredited Plaintiff's testimony, failed to provide legally sufficient reasons for rejecting the opinion evidence of Dr. Lynam, and erroneously rejected Plaintiff's VA rating. By failing to incorporate all of Plaintiff's limitations into the RFC and, by extension, the dispositive hypothetical question posed to the VE, the ALJ's conclusion lacks evidentiary support. *Robbins*, 466 F.3d at 886; *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (internal citation omitted). As such, the ALJ's step five finding is not supported by substantial evidence.

The ALJ's step five finding is reversed and this case must be remanded.

## VI.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be

required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony, the medical opinion evidence, and Plaintiff's VA rating.

As to the second requisite, the Commissioner asserts that "Plaintiff's activities, treatment history, the objective medical evidence, and the opinions of Dr. Johnson and the State agency consultants all indicate that Plaintiff could work." Def.'s Br. 15.

The Court disagrees. As discussed above, the ALJ overstated Plaintiff's activities, and mischaracterized Plaintiff's actual course of treatment. The record here provides a detailed longitudinal picture of Plaintiff's worsening impairments over time and is consistent with the opinions of Plaintiff's treating physician, who opined that Plaintiff was unable to return to work. Tr. 735, 738, 741. As for the opinion of Dr. Johnson, the Court observes that the ALJ did not accord the opinion controlling weight and the Commissioner may not now use such an opinion to manufacture a conflict at the credit-as-true stage. *See* Tr. 25–26. Significantly, the ALJ rejected, at least in part, every medical opinion from a provider that actually treated or examined Plaintiff. In other words, the only medical opinion evidence in the record to which the ALJ assigned great weight, were the State Agency consultants who never actually treated or examined Plaintiff. Courts in this District have remanded for an immediate calculation of benefits in similar circumstances. *See, e.g.*, *Wesman v. Berryhill*, No. 6:16-cv-01222-JR, 2018 WL 1249921, at *11 (D. Or. Feb. 21, 2018) ("Indeed, the only physicians of record who opined plaintiff was capable of full-time employment never treated or examined him."), *adopted sub nom.*, 2018 WL 1247866 (D. Or. Mar. 9, 2018); *Moody v. Berryhill*, No. 6:16-cv-0843-JE, 2017 WL 4740792, at *9 (D.

Or. Oct. 11, 2017) ("the medical evidence of record—except for a single consultative examiner's opinion—is fully consistent with Plaintiff's testimony and claim").

As to the third requisite, which the Commissioner did not squarely address, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Plaintiff testified that he stopped working, in part, due to his "anger and irritability" and ongoing problems sleeping. Tr. 42; *see also* Tr. 52 ("The nightmares particularly is what causes me to have a hard time sleeping."). He explained that he "was having to leave work often due to either not sleeping or irritability[.]" *Id*. When the VE was posed with a hypothetical that accounted for this testimony, the VE testified that such a worker would be unable to sustain competitive employment:

> Q. Okay. And then separately if an individual that's limited to unskilled work, . . . but also would be having to leave work early, and that would happen perhaps two to three times a month anywhere from 30 minutes to two hours early, could that individual retain competitive employment?
>
> A. Not in my opinion, counsel.

Tr. 58.

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted). Considering the record as a whole, the Court concludes that there is no reason for serious doubt as to whether Plaintiff is disabled. *See id.* at 1021; *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to

whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). As such, the Court exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the reasons above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 21st day of July 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge